GEORGE BENZ & SONS, a Minnesota corporation, Plaintiff,

v.

TWIN CITY MILK PRODUCERS ASSOCIATION, Inc., et al., Defendants.

No. 3-68 Civ. 231.

United States District Court
D. Minnesota,
Third Division.
May 28, 1969.

Irwin I. Zatz, Chicago, Ill., and Kelly, Segell & Fallon, by Hyam Segell, St. Paul, Minn., for plaintiff.

Sydney Berde, St. Paul, Minn., for defendants Associated Dairymen, Inc., Cloverleaf Creamery Co., Inc., Superior Dairy Fresh Milk Co., and Norris Creameries, Inc.

Comaford, Fassett, Clarkson & Lewis, by L. Glenn Fassett, Minneapolis, Minn., for defendant Franklin Creamery, Inc.

Dorsey, Marquart, Windhorst, West & Halladay, by Michael E. Bress, Minneapolis, Minn., for defendant Ewald Bros., Inc.

Oppenheimer, Hodgson, Brown, Wolff & Leach, by Harris Ravine, St. Paul, Minn., for defendant Sanitary Farm Dairies, Inc.

Cant, Haverstock, Gray, Plant & Mooty, by Robert E. Bowen, Minneapolis, Minn., for defendant Fairmont Foods, Co., Inc.

Doherty, Rumble & Butler, by Eugene M. Warlich, St. Paul, Minn., for defendants Albert Lea Cooperative Creamery Assn., and others.

Faegre & Benson, by James B. Loken, Minneaspolis, Minn., for defendant Northland Milk & Ice Cream, Co., Inc.

Gislason, Reim, Alsop & Dosland, by Donald D. Alsop, New Ulm, Minn., for defendant Five Star Dairyland Cooperative.

NEVILLE, District Judge.

This antitrust action seeks both treble damages and injunctive relief. It is brought under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, Sections 4 and 16 of the Clayton Act, 15 U. S.C. §§ 15 and 26, and Section 608c(7) (A) of the Agricultural Marketing Agreement Act, 7 U.S.C. § 608c.

Plaintiff, Geo. Benz & Sons, is engaged in business at Norwood, Minnesota through its Oak Grove Dairy division as a bottler and distributor of milk and milk products (hereinafter Oak Grove). It is alleged that Oak Grove purchases raw milk in commerce from approximately 136 milk producers, none of whom are members of a cooperative; that it processes this milk and sells the same as packaged milk products in some 30 western, southwestern and central counties of Minnesota.

Defendants are eleven incorporated cooperative associations of dairy farmers, an unincorporated association of cooperatives, three individuals who are officers or agents of two of the incorporated cooperatives and nine milk bottlers or handlers. The nine bottlers or handlers receive raw milk from two of the cooperatives and distribute packaged milk in the "Minneapolis—St. Paul, Minnesota Marketing Area" pursuant to Federal Milk Order No. 68 issued by the Secre-

tary of Agriculture. 7 C.F.R. § 1068.1 *et seq.* At the time the complaint was filed on August 23, 1968, plaintiff alleged that it was not regulated by Order No. 68 since it neither purchased milk from producers located in the "Minneapolis—St. Paul, Minnesota Marketing Area" nor sold any milk products in that marketing area. In addition to milk distribution in the regulated area under Order No. 68, plaintiff alleges that the defendant bottlers and defendant cooperative Land O'Lakes Creameries, Inc. distribute milk in an unregulated area lying south of the area embraced in Order No. 68 in competition with plaintiff.[1]

Plaintiff alleges that the defendant milk cooperatives and the defendant bottlers have entered into and engaged in a conspiracy to restrain and monopolize trade and commerce in Grade A fluid milk at all levels of sale and distribution striving and seeking to eliminate competition from plaintiff, who is not a customer of the defendant milk cooperatives, in the then existing unregulated milk markets. Plaintiff further alleges that the defendants have conspired to fix the wholesale and retail prices for packaged Grade A milk and have conspired to monopolize or exercise monopolistic control over all Grade A milk supplies in both regulated and unregulated markets from Minneapolis to the Gulf of Mexico.

Pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure, defendants have brought a motion to dismiss or alternatively for partial summary judgment as to paragraphs 12(a), 12(d), 12(e) and 15 of plaintiff's complaint. Defendants contend *inter alia* that the above paragraphs relate to group solicitation of governmental action and that such activity is not forbidden by the antitrust laws.

Plaintiff in its brief (pages 3 and 4) has summarized and paraphrased the contents of these paragraphs as follows:

"12(a) In August, 1967, defendant Twin Cities Milk Producers Association (TCMPA) and the defendant bottlers met with a public official in an effort to fix the retail price of milk to the defendants' advantage.

12(d) The defendants have further attempted to eliminate competition from plaintiff in the unregulated market area adjacent to the market area covered by milk market Order No. 68 and to enhance defendants' monopoly over the supply of milk by expanding the said controlled market area to include plaintiff's business.

12(e) The expansion of Order No. 68 would have the following adverse competitive effects:

(1) Additional operating costs would be imposed upon plaintiff due to payments to the Milk Market Administrator, as well as increased accounting costs.

(2) Plaintiff's suppliers of milk would not benefit from the marketwide pool under expanded Order No. 68, and plaintiff's suppliers would not share in the premium payments TCMPA and LOL [Land O'Lakes Creameries, Inc.] extract from their bottlers and handlers. TCMPA, LOL, M–W Association and Associated [Associated Dairymen, Inc.] would enhance and fortify their monopoly over the supply and price of Grade A milk."

In paragraph 15 it is alleged that plaintiff will suffer irreparable injury if Order No. 68 is expanded and if a new market order is put into effect covering the southern portion of Minnesota where plaintiff conducts business through its Oak Grove Dairy division.

█ A reading of the above paragraphs in the complaint convinces the court that plaintiff is attempting to

---

1. This area is now regulated by Milk Order No. 61, 34 F.R. 5905. ["Southeastern Minn.—Northern Iowa (Dairyland) Marketing Area"]

state an antitrust claim based on defendants' participation with federal officials in Federal Milk Order proceedings. For the reasons stated below, the court grants defendants' motion to dismiss and for partial summary judgment[2] as to plaintiff's complaint and the prayer for relief based thereon insofar as the same contain allegations or requests relating to activities of the various defendants in procuring or attempting to procure action on the part of the Secretary of Agriculture regulating the sale and distribution of milk and milk products and the effects thereof. The court proceeds on the ground that group solicitation of governmental action, even though the purpose of such action be to affect competition cannot be a basis for an antitrust claim.

In Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) the Supreme Court held that joint efforts by businessmen to obtain legislative or executive action intended to injure their competitors would not constitute a Sherman Act violation. The Supreme Court stated:

"We accept, as the starting point for our consideration of the case, the same basic construction of the Sherman Act adopted by the courts below —that no violation of the Act can be predicated upon mere attempts to influence the passage or enforcement of laws. * * * Accordingly, it has been held that where a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action, no violations of the Act can be made out. These decisions rest upon the fact that under our form of government the question whether a law of that kind should

pass, or if passed be enforced, is the responsibility of the appropriate legislative or executive branch of government so long as the law itself does not violate some provision of the Constitution." [footnotes omitted] 365 U.S. at 135–136, 81 S.Ct. at 528.

The Supreme Court said there could be no Sherman Act violation even though the District Court had found that the railroads' sole purpose in seeking to influence the passage and enforcement of the laws in question was to destroy the trucking business as a competitor for the long-distance freight business. As to this point the Supreme Court said:

"Indeed, it is quite probably people with just such a hope of personal advantage who provide much of the information upon which governments must act. A construction of the Sherman Act that would disqualify people from taking a public position on matters in which they are financially interested would thus deprive the government of a valuable source of information and, at the same time, deprive the people of their right to petition in the very instances in which that right may be of the most importance to them. We reject such a construction of the Act and hold that, at least insofar as the railroads' compaign was directed toward obtaining governmental action, its legality was not at all affected by any anticompetitive purpose it may have had." 365 U.S. at 139–140, 81 S.Ct. at 530.

The holding of the *Noerr* case was reiterated by the Supreme Court in United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). There a small coal mining company charged that certain large coal operators and the United Mine Workers

2. Defendants' motion to dismiss is stated in the moving papers to be brought under Rule 12(b) of the Federal Rules of Civil Procedure. Obviously it is directed to 12(b) (6), "failure to state a claim upon which relief can be granted." Though the motion for partial summary judgment is stated to be brought "in the alternative" it would seem to follow that the motions complement each other and it is perhaps semantic as to which nomenclature is used, i. e., dismissal or partial summary judgment, for if the motion to dismiss is granted, it is for practical purposes also a partial summary judgment in this particular case.

had conspired to put the small company out of business in violation of Sections 1 and 2 of the Sherman Act. At trial the District Court admitted evidence that the companies and the union jointly and successfully managed to have the Secretary of Labor set a minimum wage under the Walsh-Healey Act, 41 U.S.C. § 35 et seq., that was higher than in other industries and which made it difficult for the smaller company to compete with the larger ones. Evidence also was admitted that at a subsequent meeting attended by both company and union representatives, the Tennessee Valley Authority was urged to curtail its spot market purchases of coal, a substantial portion of which were exempt from the Walsh-Healey order. The Sixth Circuit sustained the admissibility of such evidence on the ground that it was designed to show an illegal purpose or an intent to further a conspiracy to violate the antitrust laws. Pennington v. United Mine Workers, 325 F.2d 804, 817 (6th Cir.1963), rev'd, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The Supreme Court reversed the District Court and the Sixth Circuit on this point, stating:

> "The jury was instructed that the approach to the Secretary of Labor was legal unless part of a conspiracy to drive small operators out of business and that the approach to the TVA was not a violation of the antitrust laws 'unless the parties so urged the TVA to modify its policies in buying coal for the purpose of driving the small operators out of business.' If, therefore, the jury determined the requisite anticompetitive purpose to be present, it was free to find an illegal conspiracy based solely on the Walsh-Healey and TVA episodes, or in any event to attribute illegality to these acts as part of a general plan to eliminate Philips [the small coal company] and other operators similarly situated. Neither finding, however, is permitted by Noerr for the reasons stated in that case. *Joint efforts to influence public officials do not violate the anti-*
> *trust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act.*" [emphasis added] 381 U.S. at 670, 85 S.Ct. at 1593.

Plaintiff, while recognizing the holdings in the *Noerr* and *Pennington* cases, states that paragraphs 12(a), 12(d) and 12(e) are "in the Complaint to show the character and purpose of the conspiracy to violate the antitrust laws." Plaintiff's Brief, p. 8. The court does not rule at this time that under certain circumstances evidence of defendants' participation in regard to Federal Milk Orders might not be admissible to show the purpose and character of *other* transactions or conspiracies claimed to be violative of the antitrust laws. United Mine Workers v. Pennington, *supra* at 670, n. 3, 85 S.Ct. 1585. The complaint itself, however, attempts to state a cause of action as though arising out of defendants' activity in Federal Milk Order proceedings. Thus plaintiff's second prayer for relief requests that the defendants:

> "be restrained and enjoined, both *pendente lite* and permanently, from in any manner taking any steps or action to expand Federal Order No. 68 to include the unregulated area in Minnesota and Wisconsin adjacent to the area covered by Order No. 68, and from in any manner participating in any hearings called for the purpose of so expanding Federal Order No. 68; or from counselling, advising, recommending, voting upon or otherwise participating in the promulgation of any new or other federal order proposed to cover that part of the State of Minnesota as a part of the proposed 'marketing area' in that certain proceeding pending before the United States Department of Agriculture, Consumer and Marketing Service, designated as Docket No. AO–367." Plaintiff's Complaint, p. 14.

Plaintiff is attempting in its complaint what *Noerr* and *Pennington* prohibit.

684

Plaintiff is not entitled either to injunctive relief or treble damages under the antitrust laws to the extent that such a claim is based on defendants participation in Federal Milk Order proceedings.

■ The court is informed that the proceedings mentioned in paragraphs 12(d) and 12(e) have in fact been completed and that orders have been issued by the Secretary of Agriculture. 34 F. R. 5909, 5918. This in any event might seem to render plaintiff's second prayer for relief moot. Apparently plaintiff participated in these proceedings and filed exceptions to matters contained in the Recommended Decisions. 33 F.R. 18158, 18181; 34 F.R. 3833, 3841. If plaintiff is dissatisfied with the final orders of the Secretary of Agriculture, it must pursue its administrative remedies under 7 U.S.C. § 608c(15). This statutory remedy, allowing ultimate appeal to a United States District Court, is exclusive and must be followed. United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946); United States v. Lewes Dairy, Inc., 337 F.2d 827 (3rd Cir.1964), cert. denied, 379 U.S. 1000, 85 S.Ct. 720, 13 L.Ed.2d 702 (1965); Willow Farms Dairy, Inc. v. Benson, 276 F. 2d 856 (4th Cir.1960); Uelman v. Freeman, 267 F.Supp. 842 (E.D.Wis.1967); United States v. Mills, 185 F.Supp. 709 (D.Md.1960).

■ The court does not gainsay plaintiff's claim that a conspiracy to violate the antitrust laws can consist in part of lawful acts, and agrees with plaintiff that such lawful acts may not in themselves form the basis of a claim. It is for this reason that the court does not rule at this time on the admissibility of evidence, but limits its ruling to granting defendants' motion to dismiss and for partial summary judgment.

■ In sum, the court holds that plaintiff may not base an antitrust claim either on defendants' participation in Federal Milk Order proceedings or on the Milk Orders resulting therefrom.

A separate order has been entered.