CONTROL DATA CORPORATION,
Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,
Defendant.

DATA PROCESSING FINANCIAL & GENERAL CORPORATION,
Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,
Defendant.

APPLIED DATA RESEARCH, INC.,
Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,
Defendant.

PROGRAMMATICS INCORPORATED,
Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,
Defendant.

Nos. 3–68 Civ. 312, 3–69 Civ. 157–159.

United States District Court
D. Minnesota,
Third Division.

Nov. 12, 1969.

Order Amending Pretrial Order No. 2.

Nov. 20, 1969.

---

Oppenheimer, Hodgson, Brown, Wolff & Leach, by John G. Robertson, St. Paul, Minn., for Control Data.

Strasser, Spiegelberg, Fried & Frank, by Victor S. Friedman, New York City, and Leonard, Street & Deinard, by Sidney Barrows, Minneapolis, Minn., for Data Processing Financial & General Corporation.

Jacobs & Cohen, by Morton C. Jacobs, Philadelphia, Pa., and Pressman & Scribner, by David Scribner, New York City, for Applied Data Research, Inc. and Programmatics, Inc.

Faegre & Benson, by Lawrence C. Brown and John D. French, Minneapolis, Minn., and Cravath, Swaine & Moore, by Thomas D. Barr, New York City, for IBM.

PRETRIAL ORDER No. 2

NEVILLE, District Judge.

The first above captioned case originated and is pending in this court. The

three other above captioned cases were transferred to this court by an order of the Judicial Panel on Multidistrict Litigation filed July 31, 1969, pursuant to 28 U.S.C. § 1407 for consolidated pretrial proceedings for all four cases. Pursuant to this court's pretrial Order No. 1 of August 26, 1969, a pretrial conference attended by counsel for all parties was held at St. Paul, Minnesota, on September 19, 1969, with an agenda of some 11 matters as set forth in said pretrial Order No. 1.

Though no answers have yet been filed by the defendant (IBM) and the court as yet has heard no evidence, it appears from the statements of various counsel that IBM is a new York based corporation engaged in manufacturing and selling electronic computers and computer equipment. Broadly speaking, the computers themselves are referred to as "hardware" and the material used in their operation such as tapes, punch cards and basic operation programs, training courses, etc., are referred to rather generally as "software." IBM manufactures, sells and leases both hardware and software. Its counsel states that there are approximately eighty other companies, many of them large corporations, which compete with it to some degree in manufacturing hardware, though the various plaintiffs' complaints allege that defendant's share of the market approximates or exceeds 70%. The plaintiffs variously charge IBM with violations of Sections 1 and 2 of the Sherman Act, allege the applicability of the Clayton Act, assert the common law offense of unfair competition and in some instances other violations of law such as the Robinson Patman Act.

Plaintiff Control Data Corporation (CDC) competes with IBM in that it manufactures both hardware and software, and sells and leases the same to users. The complaint in the CDC suit charges some 37 instances of alleged monopolistic practice on the part of IBM and certain other violations of law.

Plaintiff Data Processing Financial & General (DPF & G) does not manu-facture hardware but buys and has bought at least 99% of some 200 million dollars' worth of hardware it now owns from IBM. It leases this hardware to various customers "at rates which compare favorably with rental rates that the end user could get directly from the manufacturer." DPF & G believes itself to be the largest single hardware customer of IBM and in its leasing function it is a direct competitor of IBM. DPF & G operates data centers throughout the United States, supplies software and various items of peripheral equipment and system maintenance.

Plaintiff Applied Data Research, Inc. (ADR) does not manufacture, sell or deal in hardware but is a manufacturer of software and sells or leases the same to customers. It claims to have been one of the first companies to market a "software package" in competition with IBM and other hardware manufacturers. ADR particularly complains of IBM's "bundling" or tie-in practices whereby it is claimed IBM sells its hardware at a high price and then furnishes the software and programming services free to the customer, thus allegedly unfairly competing with ADR.

Plaintiff Programmatics Incorporated (PI) apparently has merged with or been bought out by ADR in some fashion which counsel did not make entirely clear at the pretrial conference, though he states such will not affect the maintenance of the action by PI. This is a matter that discovery procedures may shed light on in due course. PI has developed and markets in California and elsewhere a software "sort" program. It is a "special purpose computer system" called Pi Sort which it is claimed can reduce by one-half the amount of machine time presently required by IBM's present system of sorting. PI contends that after its program was on the market IBM announced a similar competitive new program and gave it away free to hardware purchasers and others.

IBM twice prior to the institution of these actions has been in antitrust litiga-

tion with the Federal Government.[1] The first Government action was brought in 1932 and culminated in an injunction entered in the Southern District of New York on December 26, 1935. By its terms IBM (and others) were permanently enjoined: " * * * from making, entering into, carrying out or enforcing any agreement or understanding, express or implied, with competitors dealing in tabulating machines—" whereby they agreed only to lease and not to sell the same, to adhere to minimum prices, and to require customers to purchase tabulation cards only from their lessors or pay higher prices. The computer industry as it now exists had not been born in 1935.

Again in 1952 the United States of America filed a civil complaint in the United States District Court for the Southern District of New York against IBM charging violations of Sections 1 and 2 of the Sherman Act. This resulted in a consent decree with judgment entered pursuant thereto on January 25, 1956. Prior to this time apparently IBM had not sold, and had refused generally to sell, computer hardware or software, but had merely leased the same to customers. Though the decree is many pages in length, its principal provision so far as its impact on the four lawsuits now before this court required IBM to offer its hardware for sale "upon terms and conditions which shall not be substantially more advantageous to IBM than the lease charges, terms and conditions for such machines." It was not until after the entry of this consent decree that companies such as DPF & G and numerous others came into existence. Thus to an extent the 1956 consent decree gave rise to an entirely new industry, i.e., the purchasing and releasing of IBM electronic computer hardware and perhaps other equipment.

The above brief recital of facts has been made because several of the principal items on the agenda at the pretrial conference of September 19, 1969 were IBM's motions to strike from all four complaints certain allegations, including reference to either of the above decrees on the grounds that the same are totally immaterial and irrelevant and if not stricken will be substantially prejudicial to defendant when and if the cases are tried to a jury. The several plaintiffs' complaints vary as to their allegations and so will be taken up separately later herein.

The court is of the opinion that all references to both the 1935 and the 1956 decrees should be stricken from the four complaints, and that such ruling should be made now in these pretrial proceedings rather than be deferred for ruling until the time of trial:

(1) So that the issues may be defined and appropriate appellate review may be sought by either party and a final determination made before trial date.

(2) So that the scope of pretrial discovery may be defined and perhaps at least to some extent reduced, and

(3) So that the parties, in ultimate preparation for trial will not have to make alternate preparation not knowing what the court may rule at the time of trial.

As to (2) above the court recognizes that under Rule 26 et seq. of the Federal Rules of Civil Procedure matters may be inquired into even though the testimony will be inadmissible at the trial, if such inquiry is reasonably calculated to lead to the discovery of admissible evidence. Thus the court does not rule that in discovery proceedings references may not in some ways be made to the decrees, but does rule that neither decree will be admissible at a jury trial nor

---

1. The court is advised that the United States again has, and for the third time, instituted a civil antitrust action against IBM which is now pending in the Southern District of New York. This case is not a part of these consolidated pretrial proceedings and could not be made such under the express provisions of 28 U.S.C. § 1407. The Government complaint alleges numerous monopolistic practices but is not per se an attempt directly to enforce the two prior decrees against IBM.

will any reference thereto be permitted nor will any claim be sustained based upon alleged violation thereof or failure to comply therewith.

On December 31, 1968 this court originally heard defendant's motion, directed at that time solely to *Control Data Corporation's* complaint, seeking to strike therefrom all references to the 1956 consent decree, there being no reference therein to the 1935 judgment or decree. The CDC complaint does not per se seek to enforce the provisions of the consent decree nor does it purport to set forth an independent cause of action based thereon, though it does assert that one of the 37 instances of IBM's alleged monopolistic practice grows out of its failure to abide what the decree required, perhaps a distinction without a difference. The court made no ruling because of the pending petition to the Judicial Panel on Multidistrict Litigation to consolidate that case with the other various cases for pretrial purposes.

The complaint of *Data Processing Financial & General Corporation* makes one or some historical references to the 1956 consent decree but in Count V advances an ingenious and novel theory that it is a third party beneficiary of the 1956 consent decree and/or the contract embodied therein and as such is entitled to bring suit against IBM *not* under the antitrust laws for treble damages but for single damages as for any breach of a simple contract.

The complaint of *Applied Data Research, Inc.* makes a number of historical references to the 1952 decree and to the 1956 consent decree and as now amended, appears to assert a violation of the orders and injunction contained in both. Its prayer for relief *inter alia* asks that the court find IBM in contempt for such claimed violations. It also purports to state, or possibly could be construed to so state, a separate third party beneficiary contract cause of action.

The complaint of *Programmatics, Inc.*, again, as with the others, has a number of historical references to the 1935 and to the 1956 decrees. Its complaint is drawn by the same counsel as represents ADR and it is quite similar to the ADR complaint in its format.

There are a number of decided cases striking from a complaint in a treble damage action brought under the Clayton Act recitals of nolo contendere pleas entered in previous criminal cases. The holdings are quite uniform that such allegations must be stricken. City of Burbank v. General Electric Co., 329 F.2d 825 (9th Cir. 1964); State of Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D.Minn.1968); State of Illinois v. Sperry Rand Corp., 237 F.Supp. 520 (N. D.Ill.1965); N. W. Electric Power Coop., Inc. v. General Electric Co., 30 F.R.D. 557 (W.D.Mo.1961); Polychrome Corporation v. Minnesota Mining & Mfg. Co., 263 F.Supp. 101 (S.D.N.Y.1966); Atlantic City Elec. Co. v. General Electric Co., 207 F.Supp. 620 (S.D.N.Y.1962). It is said that these pleas are the equivalent of consent decrees under Section 5 (a) of the Clayton Act, 15 U.S.C. § 16(a). City of Burbank v. General Electric Co., supra 329 F.2d at p. 831; Polychrome, supra 263 F.Supp. at p. 103.

■■ It follows that a consent judgment whether it be in a civil case or a nolo plea in a criminal case, or any evidence thereof, is not admissible in a treble damage action and can have no real purpose except to attempt to prejudice a defendant before a jury. The issue is whether IBM, within the period of the applicable statute of limitations, has violated the antitrust laws, not whether it previously has been found guilty thereof (1935 decree) or has consented to a decree (1956). It can in truth be stated that at a trial before a jury, reference to a prior decree is for practical purposes nearly the equivalent of the prima facie evidence rule so far as informing the jury that IBM has previously been in trouble with the government. Whatever this court might think as to the desirability of the rulings contended for by plaintiffs where a defendant twice has litigated with the government resulting in two decrees and is again in similar litigation, the court is

bound to follow existing law. The court cannot discern that plaintiffs' contentions are in fact the law. Clearly a decree (even if someone were to attempt to include a consent decree in this category) can in any event be prima facie evidence only as to matters, or practices or occurrences existing prior and up to the date of the entry of the decree. At the time of the entry of the decrees in this case none of the plaintiffs existed, although Control Data was about to have its beginnings. Clearly the statute of limitations long has run as to any events preceding 1956. Further, since none of plaintiffs were in existence until 1957, it cannot be said that they were injured in their "business or property" within the meaning of Section 4 of the Clayton Act, 15 U.S.C. § 15, by any 1956 or prior actions of defendant.

It is argued that the plaintiffs do not seek ultimately to introduce the decrees into evidence for their prima facie effect but rather to assert the violation of the terms thereof by IBM. The law is rather clear that a third party, a stranger to the decree and not a party to the government action either directly or by intervention, cannot attempt to enforce it against the defendant. United States v. United States Gypsum Co., 124 F.Supp. 573 (D.D.C.1954); United States v. Paramount Pictures, 75 F.Supp. 1002 (S.D.N.Y.1948); Paul M. Harrod Co. v. A. B. Dick Co., 194 F.Supp. 502 (N.D.Ohio 1961); United States v. American Society of Composers, Auth. & Pub., 341 F.2d 1003 (2d Cir. 1965).

The Attorney General is the representative of the public interest in antitrust cases brought by the government and only parties to a consent decree have standing to enforce rights consonant with underlying purposes of the decree. As stated in United States v. United States Gypsum Co., supra 124 F.Supp. 579, at 579:

"Parties to an original anti-trust suit have a status therein which often does not apply to outsiders. This arises from the practical effects of the decree upon the legal rights of the parties. * * *"

In some instances there have been numerous parties to the original government action and they have been held to have at least limited rights under the decree. There also are a few cases which have permitted intervention prior to the finality of the decree by interested third parties. See Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967). Such would indicate that if these plaintiffs believe they have a right to enforce either the 1935 or the 1956 decrees, they should petition the Federal District Court for the Southern District of New York accordingly. On the question as to whether they would be permitted some 34 and 13 years later to intervene or to assert claims, this court does not express an opinion. Rather apt here is the language of Paul M. Harrod Co. v. A. B. Dick Co., supra, 194 F.Supp. 504, at p. 504, where the court struck reference to a prior decree from the treble damage complaint:

"Defendant asserts that the term 'antitrust laws,' as used in the above section and as defined in 15 U.S.C.A. § 12, does not include a judgment or decree entered in connection with an antitrust case filed by the Government. Plaintiff, on the other hand, asserts that 'the violation of the earlier decree of *this* court in itself gives rise to an independent cause of action under Section 4 of the Clayton Act.' 15 U.S. C.A. § 15. Plaintiff's Brief, p. 7. Plaintiff concedes that 'as far as he has been able to ascertain, this contention raises issues which have never before been decided by any appellate court.' Plaintiff's Brief, p. 5."

It would seem to follow almost as an *a fortiori* that if a third party has no standing to seek enforcement of a consent decree by direct contempt or injunctive proceedings, it would have no right to bring an action under Section 4 of the Clayton Act for treble damages and bottom its claim on a violation of such decree.

The court believes that reasons of policy as well as the rationale of the decided cases augur for the conclusion that a treble damage plaintiff cannot assert a violation of a prior decree, whether it be a consent decree or a decree entered on order of the court after trial.[2]

1. Traditionally and historically only the parties to a judgment have rights of enforcement thereunder. Thousands of money and other judgments exist in various courts in the land but strangers thereto cannot attempt or expect to have rights thereunder.

2. If relief of the type plaintiffs request were to be granted, it seems to the court that such should be done prospectively and through legislative enactment by Congress. For instance, counsel for DPF & G has advised the court by affidavit that some 495 antitrust consent decrees entered within the last 25 years have been examined. Were it to be held that these consent decrees accord rights to third parties, then retroactively 495 companies or industries (and perhaps more if several defendants are involved in one case) would have consequences attached to their consent decrees which undoubtedly their attorneys who drafted them or advised concerning them did not contemplate, intend nor expect.

3. Were plaintiffs' contentions upheld, certainly it would be very apt to foster litigation from multiple sources.

4. If plaintiffs were to prevail, the practice and feasibility of entering antitrust consent decrees as contemplated by Congress might virtually disappear. A company charged with an antitrust violation might well reason that it has little to lose by a trial of its case even should it be unsuccessful, since the alternate of entering into a consent decree thereafter is going to be useable against it in damage actions in any event. Certainly the government would be hampered in attempting to procure consent decrees.

5. By Section 4 of the Clayton Act (15 U.S.C. § 15) Congress permitted treble damage suits by any person injured in his business or property by reason of anything "forbidden in the antitrust laws." To permit the parties in effect by their private negotiations and stipulations to enlarge, narrow or otherwise define the scope of the antitrust laws in a consent decree so as to create a cause of action in a third person, raises the question of an unauthorized delegation of legislative power. So in Paul M. Harrod Co. v. A. B. Dick Co., 194 F.Supp. 502, 504 (N.D.Ohio 1961), the court stated:

"* * * Such decrees do not necessarily reflect the prohibitions of the antitrust laws but may, by their terms, seek to dissipate the effects of the past conduct of the parties and, to this end, frequently enjoin performance of acts lawful in themselves. To permit a private party to recover damages for violation of any provision of such a decree is so obviously beyond the scope of the term 'antitrust laws,' as used in the statute, as to require no further discussion."

6. To permit enforcement of an antitrust consent decree by third parties in reality makes the decree a statute continuing perhaps in perpetuity, and one withal not enacted by Congress.

7. Again for all practical purposes, to permit plaintiffs' theory to prevail would abort the protection against the prima facie rule now afforded by 15 U.S.C. § 16(a).

The court is not unaware of the underlying philosophy of the Clayton Act to create "private attorneys general" to aid in the enforcement of the antitrust law, but does not believe such can carry the result contended for by plaintiffs.

The attempt particularly by plaintiff DPF & G to assert that it is a third party beneficiary of the contract embodied in the 1956 consent decree is

---

2. The court is advised that ADR has perfected an appeal to the Court of Appeals of the Second Circuit from an order denying its motion for a preliminary injunction. Nothing stated in this opinion is intended nor designed in any way to interfere with nor to express any opinion concerning that proceeding.

most interesting. It points to Section 4(a) of that consent decree wherein it is recited:

"It is the purpose of this Section IV of this Final Judgment to assure to users and prospective users of IBM * * * Electronic Data Processing Machines at any time being offered by IBM for lease and sale an opportunity to purchase and own such machines at prices and upon terms and conditions which shall not be substantially more advantageous to IBM than the lease charges, terms and conditions for such machines."

This provision it is claimed looks to the fact that the parties thereto intended to benefit a specific, as yet "unborn," class of plaintiffs, i. e., "users and prospective users of IBM" equipment. The decree as heretofore mentioned permits purchasing of IBM equipment, which DPF & G is doing, though apparently claiming non-compliance by IBM of both the letter and spirit of such decree.

Counsel has cited no authority in support of its third party beneficiary position, and so far as the court can determine such claim is one of first impression. It is clearly pointed out by DPF & G that it is not attempting to recover treble damages on this theory under Section 4 of the Clayton Act (15 U.S.C. § 15) as though it were injured in its "business or property" under the antitrust laws, but simply is suing on a contract for single damages in the amount of $315,500,000.00.

As aforementioned, one of the attorneys for DPF & G has presented an affidavit stating that he has read some 495 consent decrees entered in other cases over the last 25 years and that none have a provision comparable to that above quoted; that this is thus an original, unique decree and that were the court to rule favorably to plaintiffs' claim such would not affect nor be a precedent as to the other 494 decrees. Though the court itself has not read the other 494 consent decrees, it rejects this attempted differentiation. Every consent decree that is entered regardless of the precise language used must of necessity be designed to benefit others in the competitive arena who are claimed to have felt the effects of price discrimination or the exercise of monopolistic practices. Perhaps it is true that under the IBM 1956 consent decree a whole new industry has sprung up in reliance thereon; yet presumably similar results have occurred under other decrees, or at least then existing businesses have revised their operational methods, have made new investments, etc., in reliance on a particular consent decree. If plaintiffs can be said to be third party beneficiaries in this case then it would seem that a party claiming to be injured may sue under many if not most of the 495 or more consent decrees no matter how long ago entered on a third party beneficiary theory.

Further, even though the language of the IBM consent decree may differ from that in other decrees, the court does not read into the use of the particular language an intent to confer a cause of action on any third party; nor would it be permissive to seek parole evidence as to what the parties intended some 13 years ago when the decree was drafted. Counsel for IBM point out (1) that in ¶ XI e of the same 1956 consent decree, permission is given expressly to prospective licensees of tabulating cards, machinery, etc. "to apply to this court for a determination of a reasonable royalty;" (2) that there are consent decrees in other cases where rights have been conferred on third parties but such has been done explicitly; (3) that the decree was drawn by able counsel on both sides and had it been intended to confer rights on third parties, such an expression easily could have been inserted and would have been clearly stated as it was in ¶ XI e of the same decree. If Congress wishes to add a section to the Clayton Act permitting prospectively this type of third party beneficiary claim, this court would not be critical as a matter of policy, but fears that suddenly to adopt such a rule by judicial decision with its far-reaching retroactive effects might well be chaotic.

Of note here is Section 145 of the Restatement of the Law of Contracts:

"A promisor bound to the United States or to a State or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless,

(a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequenes, or * * *."

DPF & G places great reliance on Lemon v. Bossier Parish School Board, 240 F. Supp. 709 (W.D.La.1965), aff'd 370 F.2d 847 (5th Cir.), cert. denied 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350 (1967), a class action brought by Negro children, where the court held them in effect to be third party beneficiaries of an assurance in writing which was given by the local school board in return for obtaining federal funds for school construction that equal educational opportunities would be offered to them. The court held the school "estopped by their contractual agreement, and their acceptance of federal funds", to deny plaintiffs the right to attend school. Clearly this fact situation is not analogous to the case at bar and in view of the many other considerations above, the court does not feel it can subscribe to plaintiff's theory. Plaintiff DPF&G is attempting to do indirectly what it cannot do directly and the same policy reason as press for not permitting third parties and private treble damage plaintiffs to enforce an antitrust decree or judgment apply equally to the contract third party beneficiary contention.

■ CDC, which does not assert an independent cause of action based on the 1956 consent decree and admits that the same is not prima facie evidence, claims that knowledge by a jury of portions of the consent decree will be necessary to an evaluation of IBM's practice of encouraging leasing. It seems to the court that if IBM's practices within the period of the statute of limitations are or have been monopolistic and/or violative of the Sherman Act or other laws, they should stand on their own feet and be capable of proof as such; if they are not independently unlawful and provable then the fact that they are contrary to a consent decree entered some 13 years earlier cannot make them so. An attempt to show an IBM exclusionary practice based on the consent decree should receive the same answer; the decree did not make such practices unlawful as to these treble damage plaintiffs and if not unlawfully exclusionary when considered alone and without benefit of the decree, then plaintiff will fail in its proof. CDC is making an indirect attempt to enforce the decree. It argues at some length that in any event IBM will not be prejudiced before a jury if the decree references in its complaint are not stricken. With this the court cannot agree for reasons hereinabove stated.

■ In addition to the matters referred to above, ADR's complaint alleges that IBM in furtherance of monopolization and in an attempt to conspire to monopolize has "wrongfully and deceptively developed, fostered and maintained a viewpoint among computer users * * * that computer software is an intangible without market or property value." Further IBM is alleged to have committed a fraud on the United States Patent Office in applying for and obtaining patents and has advocated a view in the United States Patent Office " * * * that computer systems achieved with software are not patentable subject matter." IBM's contention is that this attacks its right to influence public officials, which it claims it is absolutely privileged to do, citing Eastern R.R. Presidents Conference v. Noerr Motor Freight Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); State of Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D. Minn.1968); George Benz & Sons v.

Twin City Milk Producers Ass'n, 299 F.Supp. 679 (D.Minn.1969). The court reads the allegations in the complaint as designed to condemn as fraudulent and dishonest IBM's public utterances to the trade and to others. Though there is an incidental reference to an attempt to persuade the Patent Office, this is not the main thrust of the allegations, which appear to allege the dissemination of inaccurate and false information to the public. While it is true under *Noerr* that an honest and fair attempt by a number of competitors acting jointly to influence the decisions of public officials is not a violation of the antitrust laws, the allegations of the complaint go considerably beyond this; further, without hearing evidence on the question of the means attempted—i. e., the alleged use of fraud—such fact question cannot be determined. This portion of IBM's motion is therefore to be denied.

Accordingly, defendant IBM's motion to dismiss and to strike portions of the various complaints is hereby granted in part as follows:

It is ordered that any and all references in the complaints of the various plaintiffs to the 1935 injunction, Equity No. 66–215 (S.D.N.Y.1935) and the 1956 Consent Decree, Civ. Action No. 72–344 (S.D.N.Y.1956) should be and hereby are stricken and evidence of the said decrees will not be admitted in evidence at the trial.

It is further ordered that Count V of the ADR complaint as amended and Count V of the DPF&G complaint are hereby dismissed and should be and hereby are stricken.

■ Defendant's motion dated August 1, 1969 sets forth in detail the paragraphs and language of the various complaints and portions of the prayers for relief to be stricken; provided however that since defendant has moved in some instances to strike an entire paragraph or prayer which otherwise pleads a violation of law or requests appropriate relief and which plaintiffs may wish to retain, only that language or portion thereof as refers to the decrees or attempts to base some relief thereon is stricken.

Defendant's motion however to strike portions of paragraph 7 E and paragraphs 14 D and 15 B of ADR's complaint is denied.

■ Plaintiffs at the pretrial conference on September 19, 1969 submitted and filed a joint plan for "First Wave" of discovery. The court has examined the same and tentatively approves it and hereby orders it in effect at least on a trial basis from and after the date of this order, subject to the following:

(1) "First Wave" discovery, extant until contrary argeement of counsel or until further order of this court shall be limited to interrogatories, document production and requests for admissions.

(2) The discovery procedures shall be reciprocal and shall apply simultaneously to all plaintiffs as well as to defendant; as an instance, Exhibit B to plaintiffs' joint plan is so worded as to apply only to defendant's documents. To the extent that defendant desires of plaintiffs the production of similar documents or documents falling within plaintiffs' general description and categories it may similarly proceed to discover and require the production of the same; further, IBM may proceed forthwith, within the limits of paragraph (1) above, to make discovery of the type requested in its motion for a protective order under Rules 30(b) and 33.

(3) Absent a future showing of good cause and except for documents set forth as having been made available to the Department of Justice and Congressional committees, documentary discovery shall be limited to transactions occurring within the United States and affecting business conducted within the United States.

(4) Defendant shall be allowed forthwith if desired to proceed to discovery by deposition or otherwise directed toward the special question of the nature, form and effect of the merger or intended and contemplated merger or purchase transaction between ADR and PI, to the end that PI's status as a party may be determined at an early date.

(5) The plan contemplates the next court hearing within 60 days. Consonant therewith the court sets *Monday, January 12, 1970* at St. Paul, Minnesota at 10:00 A.M. as a date for such hearing. At that hearing counsel will advise the court as to progress and the difficulties encountered and contemplated, if any, and request any changes or alterations in the discovery schedule. The court also will hear all motions and objections theretofore timely made.

Defendant has requested what it styles a protective order which in reality asks a stay of all discovery other than its own and the granting of a priority of discovery apparently largely or at least in part by deposition, to permit IBM to inquire into the issue of plaintiffs' claimed damages and the manner in which each plaintiff claims to have been injured by IBM's actions. Affidavits of IBM's counsel suggest that each of the plaintiffs is prospering to a greater or lesser degree and that therefore none could have sustained any substantial damage from any alleged actions of IBM. Without at this time passing on the ultimate soundness or lack thereof involved in this assertion, this motion is denied except as provided in paragraph (2) above.

The court has some doubts as to how realistic are the time schedules contained in plaintiffs' plan and, having determined that "first wave" discovery should proceed simultaneously, will consider any agreed or suggested timetable or other revision. To a large extent the court must expect counsel jointly to work out the myriad details that are certain to be involved in discovery, and would be particularly pleased if all parties were able to submit an agreed upon discovery schedule at the January 12th hearing in view of the rulings contained in this order.

As to other matters set forth in this court's pretrial order No. 1, it does not appear that there exists any necessity, at least at this time, to designate lead or liaison counsel for plaintiffs, nor is it desirable at this time to attempt to establish a document depositary. Counsel

for IBM have advised of a broad subpoena served upon it in a case pending in this court (before another judge) between Minneapolis Honeywell and Sperry Rand Company, involving a computer patent. If the production of documents in response thereto can in some practical way be coordinated with document production in the four cases now pending before this court and without prejudice thereto, counsel are invited to submit any such suggestions for the consideration of the court.

It is ordered that defendant IBM shall, within 30 days from the date of this order, serve and file its answers to the complaints of the various plaintiffs herein.

It is further ordered that the court's prior bench order made at the pretrial conference of September 19, 1969 prohibiting document destruction by any party here involved be continued in force and effect despite any document retention or destruction plan heretofore practiced by any of the parties, said order to be in the form contained in pretrial order No. 1.

As to the order made hereinabove striking all references contained in the various complaints to the 1935 and 1956 decrees and the concomitant prayers for relief, the court is of the opinion that within the meaning of 28 U.S.C. § 1292(b) such order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

It is so ordered in accordance with all of the above.

### ON MOTION TO AMEND PRE-TRIAL ORDER

This Court entered its Pretrial Order No. 2 (the "Order") on November 12, 1969 and the following oral motions with respect thereto were made on November 18, 1969:

A. The Court having ordered that Counts V of the respective complaints

of plaintiffs Data Processing Financial & General Corporation (DPF&G) and Applied Data Research, Inc. (ADR) be stricken and dismissed, said plaintiffs moved the Court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to direct the entry of final judgments as to such dismissals.

B. Plaintiffs Control Data Corporation (CDC), DPF&G and ADR moved to clarify or modify the Order by either (a) deleting from the first ordering paragraph on page 17 of the Order the clause "and evidence of said decrees will not be admitted in evidence at the trial", or (b) adding to such paragraph, directly following said clause, the additional clause: "except upon prior application to and favorable ruling by the Court out of the hearing of the jury", and plaintiff, ADR, similarly moved with respect to the 1935 decree entered against IBM.

C. Plaintiffs CDC, DPF&G and ADR moved to amend the Order to make clear that all of the Court's rulings with respect to the said decrees against IBM are included in the Court's certification under 28 U.S.C. § 1292(b);

Now, having heard all of the parties, all of whom agree that an appeal of these rulings should be expedited,

It is hereby ordered that:

1. The motions of plaintiffs, DPF&G and ADR, to have the Court direct the entry of a final judgment as to the Court's dismissal of Counts V of their respective complaints is hereby granted, and the Court hereby expressly determines that there is no just reason for delay with respect to the entry of such judgment and hereby expressly direct the entry of judgment of dismissal as to Count V of the DPF&G complaint and as to Count V of the ADR complaint as amended.

2. The motion of plaintiffs, CDC, DPF & G and ADR, for an Order clarifying or modifying the Order as set forth in paragraph B above is hereby denied, the Court having advised the parties that its rulings as regards the admissability in-

to evidence of said decrees, and as regards the prohibition against the parties' making any reference thereto at trial, was and is intended by the Court to be conclusive, unconditional and final.

3. The motion of plaintiffs CDC, DPF &G and ADR seeking clarification with respect to the identity of the matters certified under 28 U.S.C. § 1292(b) is hereby granted, and so much of the said Pretrial Order No. 2 as reads:

> "As to the order made hereinabove striking all references contained in the various complaints to the 1935 and 1956 decrees and the concomitant prayers for relief, the court is of the opinion that within the meaning of 28 U.S. C. § 1292(4) (b) such order 'involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.' "

is hereby amended and replaced by the following:

> "As to (1) the order striking all references contained in the various complaints to the 1935 and 1956 decrees and the concomitant prayers for relief, (2) the order heretofore made, and as clarified herein, providing that evidence of the said decrees will not be admitted in evidence and no reference thereto shall be permitted at trial, and (3) the order dismissing Count V of the ADR complaint, as amended, and Count V of the DPF&G complaint, the Court is of the opinion that, within the meaning of 28 U.S.C. § 1292(b), such orders involve controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from such orders may materially advance the ultimate termination of the litigation."

4. This court's order of November 12, 1969 is hereby amended by striking from footnote 2 the initials "ADR" and substituting therefor the name "Programmatics Inc.".

5. The effect and operation of this order and of this court's Pretrial Order No. 2 of November 12, 1969 insofar as either relates to the prior 1935 and 1956 decrees is stayed as to plaintiff Programmatics Inc. until the final determination of its pending appeal in the Court of Appeals for the Second Circuit, and shall be subject to any order therein made if and to the extent applicable to this proceeding; provided that if said appeal be dismissed or the lower court decision be finally affirmed, then this order and this court's Pretrial Order No. 2 shall be deemed to apply to and bind plaintiff Programmatics Inc. to the same extent as the other plaintiffs above named.

## MEMORANDUM

Counsel for IBM, CDC and DPF&G, the latter with authority to speak on some matters for ADR, attended a conference with the court relative to this court's November 12, 1969 Pretrial Order No. 2, which conference was held on November 18, 1969 at St. Paul, Minnesota. The court agreed with counsel as to the requests set forth in paragraphs A and C in the attached order, but did not believe that it should accede the request embodied in paragraph B. In support of the denied request, counsel urge first that Pretrial Order No. 2 unduly binds the trial court when three of these cases are transferred back to the jurisdiction from whence transferred; second, that many situations may arise at trial where evidence of the prior decrees might be desirable or necessary, such as impeachment, a showing of intent, disproof of defendant's anticipated attempt to claim its innocence, etc.

 It is the court's view that the very purpose of consolidated pretrial proceedings under 28 U.S.C. § 1407 is to make it possible for one judge to rule in all transferred cases in such a manner on important questions of law as will determine the course of trial in each case as to the judge who actually tries the same. Threshold legal questions should be disposed of early, so that the cause and scope of the trial and pretrial discovery will be determined. At least this court so reads paragraph 1.8 of the Manual for Complex and Multidistrict Litigation (West Publishing Edition—1969) providing for "Early Determination of Special Legal Questions." See In re Plumbing Fixture Cases, 298 F.Supp. 484, 490 (Jud.Pan.Mult.Lit.1968). In any event were the court to accede to counsel's request set forth in paragraph B above by striking references to the prior decrees from the complaint, such would make Pretrial Order No. 2 nothing more than an exercise in futility if the decrees are still to be admissible in evidence. The complaints, at least in this jurisdiction if not in all jurisdictions, are never presented to the jury. The only purpose then of an order striking allegations from the complaints is to rule in advance that those matters may not be produced at the time of the trial. To strike them from the complaint but still admit the evidence is a contradiction on its face. If the court were to say that there may be some instances where the prior decrees could be admitted into evidence i. e., "open the door a crack" so to speak, such would release the floodgates as to discovery into matters which in this court's view are not proper at the trial.

If the restriction be not now laid down, the parties must go to trial and be obliged to prepare therefor knowing not whether evidence of alleged violations of past decrees is in some way admissible. In this court's view this aborts the very purpose of the reference by the Judicial Panel on Multidistrict Litigation to one court for all pretrial rulings and proceedings.

 Plaintiff Programmatics Inc. claims by wire dated November 18, 1969 to the court that it is not bound by Pretrial Order No. 2. Some confusion perhaps exists. The order of the Judicial Panel on Multidistrict Litigation seemed to this court to be clear and unequivocal that the Programmatics case had been transferred to this court for pretrial proceedings. The Panel was aware of the then pending appeal to the Court of

Appeals for the Second Circuit from an order denying a motion for preliminary injunction but concluded "delay of its transfer is not warranted." Thereafter, counsel for Programmatics Inc. directed a letter to this court stating in part "all other available information indicates that transfer now neither was intended nor has been effected." (Letter from Jacobs and Cohen, 8/29/69). Later the court wrote counsel and suggested that the court would proceed as to the other three cases to a pretrial conference "and trust you will participate in all matters other than the IBM motions to strike references to the prior consent decree in the Programmatics complaint * * *." Morton Jacobs, Esq. is counsel for both Programmatics and for one of the other three participating plaintiffs, ADR. He attended the day-long September 19, 1969 pretrial conference and from all that the court could determine participated and argued fully not only on behalf of ADR but also on behalf of Programmatics Inc. See, for instance, Transcript p. 139 where counsel stated:

"MR. JACOBS: * * * Now, another aspect of the ADR case which also is related in the Programmatics matter is that on preliminary relief and important issue that the Court must consider is the likelihood of prevailing at trial * * *."

See also page 134 of the transcript where counsel states that basically the issues are the same as to the ADR and Programmatics Inc. cases relating to the 1935 decree. At no time did counsel indicate or remind the court that he was not participating fully on behalf of Programmatics Inc.

In any event, the court proceeded to draft its Pretrial Order No. 2 believing that the orders therein applied to and bound Programmatics Inc. as well as the other plaintiffs, including ADR represented by the same counsel. The court intended in no way however to interfere with, nor attempt to arrogate to itself the decision of any issues then or now before the Court of Appeals for the Second Circuit and attempted so to indicate in footnote No. 2 to the Pretrial Order (inadvertently using the initials ADR rather than Programmatics Inc.). If the Court of Appeals considers the decrees relevant on the issue of probable success or otherwise, this court's orders cannot, should not be and are not intended in any way to influence such consideration. The issue of the granting of a preliminary injunction may vary from discovery and trial scope.

In final analysis, the issues as to the matters determined in Pretrial Order No. 2 are the same as to Programmatics Inc. as to the other plaintiffs and the same reasoning used in reaching a decision applies. To permit Programmatics Inc. now to claim it will not be bound by the pretrial order if its appeal results in an affirmation, might allow it again to argue the matter and conceivably to appeal separately at a later date from this court's Pretrial Order No. 2. Counsel for CDC and DPF&G, as well as Morton Jacobs for ADR ably and fully argued and briefed the questions at issue as to the 1935 and 1956 decrees and the court cannot think of any possible distinction concerning the Programmatics Inc. complaint as to these issues that would lead to any different result in that case. Accordingly the court has included paragraphs 4 and 5 in the attached order.