**CINEMA SERVICE CORP.**

v.

**TWENTIETH CENTURY–FOX FILM CORP.**

Civ. A. No. 77–265 B.

United States District Court, W. D. Pennsylvania.

Oct. 1, 1979.

Edgar J. Cooke, Bellevue, Pa., Thomas M. Kerr, Jr., Jon G. Hogue, Pittsburgh, Pa., for plaintiff.

John W. Read, Pittsburgh, Pa., Herbert C. Earnshaw, Margaret Blair Soyster, New York City, for defendant.

Frederick A. Boehm, Pittsburgh, Pa., Joseph Alioto, San Francisco, Cal., Bart J. Vinik, Boston, Mass., appearing for a non-party to the action and not in connection with this particular proceeding.

## MEMORANDUM OPINION

KNOX, District Judge.

Presently before the Court is defendant Twentieth Century-Fox Film Corp.'s (hereinafter "TCF") motion for summary judgment with respect to all four counts of plaintiff's amended complaint. Extensive briefs, affidavits and exhibits were received from both parties and oral argument was heard by the Court on June 28, 1979. After careful consideration of the issues presented by defendant's motion, the Court has determined that the motion will be granted with respect to count III and denied with respect to counts I, II, and IV.

We begin with the rule that summary judgment may be granted only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Ely v. Hall's Motor Transit Co.,* 590 F.2d 62 (3rd Cir. 1978). Fed.R.Civ.P. 56(c). The burden is on the moving party to demonstrate that the test is met and the non-moving party is entitled to the benefit of all reasonable doubts and inferences that may arise in connection with the consideration of such motion. In applying this standard to the issues in the present case, we are mindful of the Supreme Court's admonition in a celebrated antitrust case that "(t)rial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Harold Friedman, Inc. v. Thorofare Markets,* 587 F.2d 127, 131–132 (3rd Cir. 1978).

### COUNTS I, II, and IV

In its amended complaint, plaintiff has alleged in three separate counts, that TCF has violated section one of the Sherman Act, 15 U.S.C. § 1, by engaging in various alleged conspiracies to restrain trade and lessen competition. In order to sustain a cause of action under § 1 of the Sherman Act, the plaintiff must prove (1) that defendant contracted, conspired, or combined with others; (2) that the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract, combination, or conspiracy were illegal; and (4) that the plaintiff was injured as a proximate result of the conspiracy. *Martin B. Glauser Dodge Co. v. Chrysler Corp.,* 570 F.2d 72, 81 (3rd Cir. 1977).

In count I, plaintiff has alleged that TCF "has consistently combined and conspired with other licensees, including affiliated theatres and theatre circuits, by arbitrarily granting higher house allowances to affiliated and circuit theatres while consistently

granting smaller arbitrary house allowances to the plaintiff." Plaintiff has asserted that, as a result of such alleged discriminatory pricing policy, it "pays a larger film rental for the films which it licenses from TCF than do the affiliated and circuit theatres for the same film" and "is prevented from competing with the affiliated and circuit theatres for first-run and sub-run motion picture films of equal quality and at reasonable exhibition dates."

Defendant contends that it has acted unilaterally in negotiating its terms and that the differences in house allowances resulted from competitive forces in the market. Defendant denies that such allowances were set pursuant to an unlawful conspiracy in which TCF and various exhibitors participated.

The plaintiff's president, Edson C. Jones, testified at the Hearing on the Motion for Preliminary Injunction in this action [1] that when he had requested an increase in plaintiff's house allowance in November, 1976, the defendant refused to negotiate such increase unless plaintiff agreed to submit an audited breakdown of actual expenses. (Hearing 38, 39, 69). Jones stated that defendant granted higher house allowances to affiliated and circuit theatres without requiring audited breakdowns of their actual expenses. (Jones Dep. 193–204, 230–232). Jones testified that because of defendant's licensing policy, plaintiff was unable to license some of the films distributed by the defendant and, as a result thereof, plaintiff sustained a loss of revenue. (Hearing 102, 113).

In support of its allegations in count I and count II, *infra,* plaintiff has offered to prove that defendant has discriminated against it and in favor of the affiliated and circuit theatres through various kinds of contractual advantages. These contractual advantages include, among others, extended runs, favorable credit terms, and various kinds of rebates. (Plaintiff's affidavit in opposition to defendant's motion for summary judgment, ex. 3). Plaintiff alleges that the competitive advantages of these provisions were so great that their inclusion in contracts with the circuit and affiliated theatres and their exclusion from contracts with the plaintiff constituted an unreasonable restraint against the plaintiff. Plaintiff contends that each allegedly discriminatory contract constituted a conspiracy between the defendant and one of the exhibitors who are identified in plaintiff's pretrial narrative. *See United States v. Paramount Pictures,* 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed.2d 1260 (1948).

Defendant has asserted that these contractual terms were subject to negotiation and that the discriminations of which the plaintiff complains are not evident from the documents which are attached to plaintiff's affidavit.

While we make no finding with respect to the strength or weakness of the plaintiff's allegations as supported by the testimony of Edson C. Jones and the documents attached to plaintiff's affidavit, we are persuaded that genuine issues of material fact have been identified and that, accordingly, summary judgment is inappropriate with respect to count I.

In count II, plaintiff has alleged that defendant conspired with various affiliated and circuit theatres in the Pittsburgh area in a split arrangement.[2] Plaintiff has asserted that multi-theatre owners agreed among themselves to the split and, as a part of the agreement, the exhibitor would call defendant and defendant would supply a particular film to that exhibitor. Plaintiff has contended that defendant allocated films only to those exhibitors involved in the split. Jones testified that defendant participated in split arrangements with exhibitors which affected the availability of desirable films to the plaintiff. (Hearing 21–26).

---

1. The Hearing on the Motion for Pre. Inj. was held on Oct. 6, 1977.

2. A split is a device by which exhibitors agree among themselves that only one, or certain of them, will attempt to license any particular motion picture offered by a given distributor in a specific geographic market. *In re Motion Picture Licensing Antitrust Litigation,* 468 F.Supp. 837, 838 (Jud.Pan.Mult.Lit.1979).

Although there is no evidence in this case that the split system, standing alone, had this effect, or was so intended, there is evidence from which it may be inferred that an artificial price structure existed. (Plaintiff's affidavit in opposition to defendant's motion for summary judgment, ex. 3). Defendant points out that plaintiff has not provided any factual support for its claims of such unlawful meetings of multi-theatre exhibitors. Although direct evidence of the terms of the alleged split arrangement has not been produced, "we have been mindful of the propriety of viewing the evidence as an integrated whole and as it relates to the general allegation of conspiracy." *Viking Theatre Corp. v. Paramount Film Distributing Corp.,* 320 F.2d 285, 299 (3rd Cir. 1963) *aff'd,* 378 U.S. 123, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964). We cannot say that defendant is entitled to summary judgment with respect to count II in light of the circumstantial evidence of an alleged conspiracy so far produced.

In count IV, plaintiff has asserted that when plaintiff refused to participate in the illegal conspiracies as alleged in counts I and II, and commenced this action, defendant ceased to do business with plaintiff in retaliation. Defendant contends that it has made an independent decision to discontinue dealing with the plaintiff and that plaintiff has failed to adduce any evidence demonstrating that TCF conspired with others in declining to deal further with the plaintiff.

Jones testified that approximately one to two weeks after this suit was filed he was notified by Daniel J. Sapernakis, a branch manager of the defendant, that plaintiff was hereafter cut off from defendant's solicitation. (Hearing 8–9). Jones and George J. Ball, a sales representative of the defendant, testified that plaintiff's credit was excellent and that plaintiff made its payments in timely fashion throughout the course of the parties' dealings, a period beginning in 1971 until the date that this action was instituted, March 14, 1977. (Hearing 10, 15, 123). Jones testified that plaintiff has sustained a loss of revenues since the termination and that the continuation of defendant's refusal to do business with the plaintiff threatens the extinction of plaintiff's enterprise. (Hearing 15, 35, 58–59).

We find that summary judgment is inappropriate where, as here, an inference could be drawn from the evidence that TCF's conduct in ceasing to do business with the plaintiff, was not motivated by its own best business interests, but rather by plaintiff's viable allegations of antitrust allegations as set forth in counts I and II. Given no contrary evidence, a jury question might well be presented as to defendant's motives in ceasing to do business with the plaintiff.

## COUNT III

In count III, plaintiff has alleged that, as a result of illegal conduct, TCF has violated the terms of a consent decree entered into by TCF and others in *United States v. Loew's, Inc.,* CCH 1951 Trade Cases, ¶ 62.861. Defendant contends that since plaintiff was not a party to the decree, it lacks both statutory authority and standing to base a private antitrust claim upon alleged violations of the decree. We agree.

Defendant has cited in its brief numerous cases wherein the courts have held both with regard to decrees generally and the *Loew's* decree specifically, that a non-party to a decree previously entered in a government antitrust suit states no cause of action by alleging a violation of its provisions and may not attempt collaterally to enforce any such decree against a defendant. *See United States v. American Society of Composers, Authors and Publishers,* 341 F.2d 1003, 1008 (2d Cir.), *cert. denied,* 382 U.S. 877, 86 S.Ct. 160, 15 L.Ed.2d 119 (1965); *Control Data Corp. v. IBM Corp.,* 306 F.Supp. 839, 845 (D.Minn.1969), *aff'd,* 430 F.2d 1277 (8th Cir. 1970); *Independent Theatres, Inc. v. American Broadcasting-Paramount Theatres, Inc.,* 179 F.Supp. 489, 490 (S.D.N.Y. 1959); *Brownlee v. Malco Theatres, Inc.,* 99 F.Supp. 312, 317 (W.D.Ark.1951). *Dahl, Inc. v. Roy Cooper Co.,* 448 F.2d 17, 20 (9th Cir. 1971); *Sablosky v. Paramount Film Distributing Corp.,* 137 F.Supp. 929, 936 (E.D.Pa.1955).

Plaintiff argues, however, that it may rely upon the decree "first, as a third-party beneficiary to enforce its rights thereunder, and second to show that defendant's dealings which violate the decree are necessarily contracts in restraint of trade outlawed by § 1 of the Sherman Act."

We do not understand § 5 of the Clayton Act, 15 U.S.C. § 16, to carry the result contended for by the plaintiff.[3] If plaintiff can be said to be a third party beneficiary in this case, then it would follow that a party claiming to be injured may sue under any of the hundreds of consent decrees no matter how long ago entered on a third party beneficiary theory. We agree with the court's analysis in *Control Data Corp. v. IBM Corp., supra,* 306 F.Supp. at 846, wherein it is stated,

> "To permit enforcement of an antitrust consent decree by third parties in reality makes the decree a statute continuing perhaps in perpetuity, and one withal not enacted by Congress . . . if plaintiffs were to prevail, the practice and the feasibility of entering antitrust consent decrees as contemplated by Congress, might eventually disappear."

Furthermore, we do not read into the use of the particular language of the *Loew's* decree an intent to confer a cause of action on any third party.

Plaintiff relies on *Leonia Amusement Corp. v. Loew's Inc.,* 117 F.Supp. 747 (S.D.N.Y.1953), in support of its claim that defendant's dealings which violate the decree are necessarily contracts in restraint of trade, and are admissible in this action. In *Leonia Amusement Corp.,* the court stated that "Congress gave private litigants the benefit of a final judgment in a government suit or prosecution by providing that it might be offered as prima facie proof of a violation of the antitrust laws." 117 F.Supp. at 764. The court did not state that a prior consent decree would necessarily be admissible in an antitrust action, but rather that such a decree "might" be admissible. Although we cannot determine from the opinion whether the court considered the policy reasons and the rationale of the decisions cited above, to the extent that *Leonia Amusement Corp.* holds to the contrary, we disagree.

It is well settled that a consent judgment in a civil case, or any evidence thereof, is not admissible in a treble damage action. *Baush Mach. Tool Co. v. Aluminum Co. of America,* 79 F.2d 217, 226 (2d Cir. 1935); *Chambers & Barber, Inc. v. General Adjustment Bureau,* 60 F.R.D. 455, 457 (S.D.N.Y. 1973); *City of Burbank v. General Electric Co.,* 329 F.2d 825, 834 (9th Cir. 1964); *Control Data v. IBM Corp., supra,* 306 F.Supp. at 843–845. Such evidence can have no real purpose except to prejudice the defendant before a jury.

We conclude that evidence of the *Loew's* decree will not be admissible, nor will any reference thereto be permitted at the jury trial; nor will any claims be sustained based upon an alleged violation thereof. Accordingly, defendant's motion for summary judgment with respect to count III must be granted.

---

**3.** 15 U.S.C. § 16(a) provides, as follows:

(a) Final judgments or decrees as prima facie evidence. A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 4A, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 4A.