**CHAMBERS & BARBER, INC., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**GENERAL ADJUSTMENT BUREAU, INC., Defendant.**

**No. 73 Civ. 848.**

United States District Court, S. D. New York.

July 30, 1973.

David Berger, P. A., Philadelphia, Pa., and Carrow, Bernson, Hoeniger, Freitag & Abbey, New York City, for plaintiffs.

Shearman & Sterling, New York City, for defendant by Robert F. Dobbin, Clarence W. Olmstead, Jr., New York City, of counsel.

GURFEIN, District Judge.

This antitrust action was instituted by the plaintiff on behalf of itself and as representative of other independent insurance adjusters throughout the United States. The defendant, General Adjustment Bureau ("GAB") is a corporation in the business of adjusting and settling insurance claims whose stock is owned by insurance companies.

The complaint filed on April 24, 1972, in the United States District Court for the Northern District of California (now 73 Civ. 848) alleges that the defendant and co-conspirators have combined and conspired to restrain trade unreasonably in the business of adjustment and settlement of insurance claims in violation of Section 1 of the Sherman Act. The alleged illegal conspiracy consisted, *inter alia*, of an agreement between GAB and its shareholders to divert adjustment business to GAB and away from independent adjusters.[1]

▉ The defendant has moved under Fed.R.Civ.P. 12(f) to strike paragraphs 22 and 23 from the complaint. Paragraph 22 alleges that the United States of America instituted an action against

GAB on March 11, 1971, alleging violations identical to those complained of by the plaintiff and that GAB subsequently entered into a consent judgment on April 15, 1971, enjoining continuation of the acts and practices at issue in this litigation. Paragraph 23 alleges that the acts and practices alleged to be in violation of the antitrust laws were fraudulently concealed from the plaintiff until March 11, 1971, the date the Government action was commenced.

I

The defendant contends that since paragraph 22 of the complaint contains allegations with respect to a consent decree entered into by the defendant "before any testimony has been taken" the provision that a final judgment on behalf of the United States shall be prima facie evidence against the defendant in a civil action does not apply (Clayton Act § 5, 15 U.S.C. § 16(a)), and that such allegations should be stricken as "immaterial" (Fed.R.Civ.P. 12(f)).

Paragraph 22 of the complaint reads as follows:

"On March 11, 1971, the United States of America instituted Civil Action No. 71–CIV–1109 in the United States District Court for the Southern District of New York. The Complaint therein alleged the illegal acts and practices set forth in this Complaint, and sought to enjoin the continuation of such acts and practices by defendant. On April 15, 1971, a consent judgment was approved by the Court, enjoining the continuation of the acts and practices alleged in the Complaint. Also made parties to the judgment were 62 shareholders-insurance companies, which insurance companies agreed to divest themselves of the stock of defendant."

---

1. There are two actions pending against the defendant in this Court, 72 Civ. 5122 MIG transferred from the Eastern District of Pennsylvania (the "PASA action")

and 73 Civ. 848 MIG tranferred to this Court by the Judicial Panel on Multi-District Litigation (the "C&B action").

There is no dispute that the consent decree was entered "before any testimony was taken." See United States v. General Adjustment Bureau, Inc., CCH 1971 Trade Cases ¶ 73,509 at 90,067 (1971). The defendant points to the well-settled principle that in such case the consent decree is not admissible in evidence. See *e. g.*, City of Burbank v. General Electric Co., 329 F.2d 825 (9 Cir. 1964); Control Data Corp. v. International Business Machines Corp., 306 F.Supp. 839, 841 (D.Minn.1969), aff'd sub nom Data Processing Financial & General Corp. v. International Business Machines Corp., 430 F.2d 1277 (8 Cir. 1970).

That does not end the matter, however. For we are not concerned on this motion with the admissibility of evidence, but with the question whether allegations of a complaint should be stricken at this early stage of the litigation.

So far as prejudice may result from the description of the consent decree in the complaint, we are still far from the presence of the jury, and steps can be taken by the Court to keep from the jury evidence which is immaterial and prejudicial. On the other hand, if the allegations are utterly immaterial and their striking might narrow the issues or otherwise expedite the lawsuit the operation should be performed early. See Manual for Complex Litigation, § 1.80.

The plaintiff contends that its reference to the consent decree is necessary to establish that the statute of limitations was suspended "during the pendency hereof," Clayton Act § 5, 15 U.S.C. § 16(b), from March 11, 1971, when the complaint by the United States was filed, until its termination one year thereafter. For the tolling provisions to be applicable the "private right of action arising under said [antitrust] laws [must be] based in whole or in part on any matter complained of in said proceeding." Clayton Act § 5, 15 U.S.C. § 16(b).

The way to determine whether the civil action is so based is to compare the complaint by the United States with the complaint in the civil action. As the Supreme Court has said, "In general, consideration of the applicability of § 5(b) must be limited to a comparison of the two complaints on their face." Leh v. General Petroleum Corp., 382 U.S. 54, 65, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965); and see Samuel Goldwyn Productions, Inc. v. Fox West Coast Theatres Corp., 146 F.Supp. 905, 907 (N.D.Cal.1956). It would be a difficult feat to compare the two complaints if the allegation telling which complaint to compare was deleted before the comparison is made.

The defendant says that the suspension period ended on April 15, 1972 and that this action (the California action) was not begun until nine days thereafter.[2] The plaintiff says otherwise. There is no motion pending to dismiss on the ground that the action is barred by the statute of limitations. Until such a motion is made I will not resolve the question on a Rule 12(f) motion to strike allegations from a pleading.

Though the Government suit ended in a consent decree, there may be a question of its "pendency" during the period when amendments were made and dispositive agreements in furtherance of the consent decree were executed. But *cf.* Barnett v. Warner Bros. Pictures Distributing Corp., 112 F.Supp. 5 (N.D. Ill.1953) cited in Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 333 n.5, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).[3] I shall not consider the prob-

2. The Pennsylvania action was filed on April 14, 1972, a day before the one year period after the consent decree ended.

3. In the consent decree this Court expressly retained jurisdiction of the action, and as late as April 27 of this year, Judge Pollack filed an opinion therein. Pursuant to the consent decree the Court had approved a trust agreement to become effective July 14, 1971.

lem nor whether the time to appeal should be included in the suspension period until it is before me on an adequate adversary review of the operative facts and a briefing of the legal consequences.

I will, accordingly, *at this time*, deny the motion to strike paragraph 22.

## II

Paragraph 23 reads as follows:

"Plaintiff and the members of the class had no knowledge of the unlawful acts alleged herein or of any of the facts which might have led to the discovery thereof, until March 11, 1971.[4] Plaintiff and the members of the class could not have discovered the violations at an earlier date by exercise of due diligence because of the practices and techniques of secrecy employed by defendant and its co-conspirators to avoid detection and fraudulently to conceal such violations."

It must be read together with paragraph 22 recited above. The complaint, reading both paragraphs together, states quite clearly that the plaintiff and members of the class had no knowledge of the illegal acts or of any of the facts which might have led to the discovery thereof until the United States filed its suit on March 11, 1971. That is a sufficient averment of when the plaintiff discovered that there was a claim for relief and permits the defendant to establish that " 'by the exercise of ordinary diligence, the discovery might not have been before made.' " See Moviecolor Limited v. Eastman Kodak Company, 288 F.2d 80, 88 (2 Cir. 1961). The defendant will be afforded an early opportunity to probe by the tools of discovery to determine whether the discovery of the claim might not have been made sooner. See Manual for Complex Litigation, § 1.80.

■ The defendant contends that paragraph 23 does not adequately comply with Fed.R.Civ.P. 9(b), however, which requires that "in all averments of fraud . . . the circumstances constituting fraud or mistake shall be stated with particularity." The rule applies to the pleading of concealment in attempts to toll the statute of limitations in antitrust actions. See Moviecolor Limited v. Eastman Kodak Company, *supra*, 288 F.2d at 88; Suckow Borax Mines Consol. Ltd. v. Borax Consol. Ltd., 185 F.2d 196, 209 (9 Cir. 1950), cert. denied, 340 U.S. 943, 71 S.Ct. 506, 95 L. Ed. 680 (1951); Hall v. E. I. Du Pont De Nemours & Co., 312 F.Supp. 358 (E. D.N.Y.1970).

■ It is contended that the allegations of paragraph 23 that discovery was not made earlier "because of the practices and techniques of secrecy employed by defendant and its co-conspirators to avoid detection and fraudulently to conceal such violations" fall short of the requirements of Rule 9(b). I think that is so if paragraph 23 is taken as standing alone. It must be read, however, with paragraph 20 of this complaint. Paragraph 20 adequately sets forth activities which from their general nature may be presumed to be secret and which could qualify as means of concealment.[5]

These allegations are that the defendant and co-conspirators have done the following:[6]

(a) caused shareholders to utilize GAB's facilities for adjustment and settlement of claims;

---

4. The date the Government filed its suit.

5. Paragraph 20 of this complaint tracks paragraph 24 of the PASA action complaint, as paragraph 23 of this complaint substantially tracks paragraph 26 of the PASA action complaint.

6. "The actual concealment of that conspiracy [price fixing] is a wrong tantamount to fraud." Public Service Co. of New Mexico v. General Electric Co., 315 F.2d 306, 310 (10 Cir. 1963).

(b) caused shareholders to boycott independent adjusters;

(c) caused shareholders to coerce and intimidate agents to channel claims to GAB;

(d) caused shareholders to adhere to GAB's assessment billing schedule in dealing with independent adjusters;

(e) formulated uniform price lists for labor and material used in the repaint and replacement of damaged property; and

(f) established uniform practices and procedures to be used in the adjustment and settlement of claims.

When paragraph 23 avers that plaintiff and members of the class could not have discovered "the violations" at an earlier date, the violations meant are obviously those described in paragraph 20. While these violations could conceivably have become known to independent adjusters, the further averment denies such knowledge "because of the practices and techniques of secrecy employed . . . fraudulently to conceal such violations." This is, in short, an allegation, not that the general scheme but that the violations particularized in paragraph 20, were conducted secretly and hence eluded discovery.[7]

Whether the plaintiff can prove the violations or that they were secretly performed and fraudulently concealed remains to be seen. But it seems quite clear to me that the fraudulent concealment, reading paragraph 20 with paragraph 23, is sufficiently alleged to enable the defendant to meet it head on.

The motion to strike paragraphs 22 and 23 is denied.

It is so ordered.

---

7. Certain techniques of concealment could hardly come to the notice of competitors, which indicates that to expect specificity in a complaint regarding secret techniques of concealment is to expect more than Rule 9(b) requires. The examples cited by then District Judge Feinberg in Ohio Valley Electric Corp. v. General Electric Co., 244 F.Supp. 914, 931–933 (S.D.N.Y. 1965) illustrate the point. There is no suggestion, of course, that those techniques were used by this defendant, but the examples point up the difficulties of literal specificity of concealment in an anti-trust case involving alleged boycott, price-fixing or the like.