Robert HAMMERMAN, Plaintiff and
Counter-Defendant,

v.

Thomas A. PEACOCK, Defendant and
Counterclaimant,

v.

Smith BARNEY, Harris Upham &
Company, Additional Defendant
on Counterclaim.

Civ. A. No. 84–2724.

United States District Court,
District of Columbia.

Feb. 7, 1985.

Morris Kletzkin, Washington, D.C., for plaintiff and counter-defendant.

Robert L. Cope, Washington, D.C., for defendant and counterclaimant.

James H. Schropp, Washington, D.C., for additional defendant on counterclaim.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

Plaintiff, Robert Hammerman (Hammerman), brought this suit against defendant Thomas A. Peacock (Peacock), alleging intentional tort, assault, and battery. Defendant counterclaimed against Hammerman and also named Smith Barney, Harris Upham & Company (Smith Barney) as an

additional defendant on the counterclaim. The counterclaim alleges nine causes of action against Hammerman and Smith Barney charging securities fraud, common law fraud, breach of contract and negligence. Peacock also alleges a claim for punitive damages. The case is presently before the court on the motion of Hammerman and Smith Barney to dismiss the counterclaim, to compel arbitration, and to strike Peacock's claim for punitive damages.

The pertinent facts giving rise to this suit are that on or about September 30, 1983, Peacock opened a discretionary stock account with Smith Barney. His account was put under the control of Hammerman, an account executive employed by Smith Barney. The account was opened with shares of stock valued at $70,500.00. Over the period ending July 27, 1984, the Peacock account suffered heavy losses estimated at $55,000.00. The counterclaim alleges that on various occasions, when Peacock inquired as to the status of his account, Hammerman assured Peacock that his account was profitable and that it was not suffering losses. When Peacock became aware of the extent of his losses, he allegedly went to the offices of Smith Barney and intentionally struck and battered Hammerman causing Hammerman to sustain serious physical and psychological injury. Plaintiff Hammerman thereafter commenced his action for assault and battery, and Peacock's counterclaim followed.

As a basis for the motion to dismiss, Hammerman and Smith Barney contend that Peacock's claims under Section 17(a) of the Securities Act of 1933 should be dismissed since there is no private remedy under this provision; that the claim under Section 10(b) of the Securities Exchange Act of 1934 and his other fraud-based claims should be dismissed for failure to set forth any factual or legal basis for such claims; that the state law claims should be dismissed because either the court lacks pendent jurisdiction or the common law claims should be severed and referred to arbitration; and finally that punitive damages are not available under federal securities laws and that Peacock is not entitled to punitive damages at common law.

The first issue to be decided in this case is whether section 17(a) of the Federal Securities Act of 1933, 15 U.S.C. § 77q(a), creates a private cause of action. Counts One and Four of defendant's counterclaim are based on section 17(a) which provides as follows:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

Although the various courts are fragmented as to whether this section implies a private right of action, the weight of authority suggests, however, that an implied private right of action for damages is unavailable under section 17(a). *Keys v. Wolfe*, 709 F.2d 413, 416 (5th Cir.1983); *Landry v. All American Assurance Co.*, 688 F.2d 381, 384–91 (5th Cir.1982); *Summer v. Land & Leisure, Inc.*, 571 F.Supp. 380, 386–87 (S.D.Fla.1983); *Kimmel v. Peterson*, 565 F.Supp. 476, 482–88 (E.D.Pa. 1983); *Hill v. Der*, 521 F.Supp. 1370, 1373–78 (D.Del.1981); *Woods v. Homes & Structures of Pittsburg, Kansas*, 489 F.Supp. 1270, 1284–88 (D.Kan.1980).

In *Landry v. All American Assurance Co., supra*, the Fifth Circuit, in a scholarly and persuasive opinion, held that no implied right of action exists under section 17(a) of the federal securities laws. In reaching this decision, the Court looked to the criteria set forth by the United States Supreme

Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and subsequent cases in which the Supreme Court applied the *Cort* test to determine whether Congress intended to create a private cause of action under section 17(a). In *Cort v. Ash, supra,* the Supreme Court outlined four factors which must be considered in determining whether a private right of action is implicit in a statute not expressly providing one:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law.

*Id.,* at 78, 95 S.Ct. at 2088.

The *Landry* court applied the four *Cort* factors to section 17(a) and concluded:

> Summarizing, then, it would appear that the *Cort* test as applied to § 17(a) of the Securities Act of 1933 points away from the implication of a private cause of action. This, together with the Supreme Court's conservative interpretation of the test in recent years, leads us to the conclusion that the district court correctly dismissed this theory of relief.

While this Court's research has revealed no binding decision in this jurisdiction on the issue, in *Deane v. Thomson McKinnon Securities, Inc.,* 586 F.Supp. 44 (D.D.C. 1984), Judge Barrington D. Parker recently expressed a strong doubt that a private remedy exists under section 17(a). While it was not necessary to decide this issue in that case because pleading deficiencies required dismissal of the complaint in any event, the Court nevertheless noted numerous recent cases holding that no private

remedy exists under section 17(a) and observed that "[t]he weight of case authority suggests ... that an implied private right of action is doubtful and unavailable." 586 F.Supp. at 47.

█ On the basis of statutory construction and the superior reasoning of those courts who follow the *Landry* view that a private cause of action is not implied, this Court adopts the holding that under section 17(a) of the Federal Securities Act of 1933, a private cause of action is not implied. Therefore, Counts One and Four of defendant's counterclaim, which are based on section 17(a) must be dismissed.

Hammerman and Smith Barney next contend that Peacock's claims under section 10(b) of the Securities Exchange Act and his other fraud-based claims should be dismissed for failure to set forth any factual or legal basis for such claims. Counts Two and Five of the counterclaim allege violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. 240.10b–5. Count Six alleges common law fraud.

Allegations of fraud are subject to Rule 9(b) of the Federal Rules of Civil Procedure which states in pertinent part:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

██ This specificity requirement applies to the anti-fraud provisions of the federal securities laws and the rules thereunder. To establish Securities Exchange Act and Rule 10b–5 violations, the complaint must allege sufficient facts, sources that support the alleged specific fact, and a basis from which an inference of fraud may fairly be taken. *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557–59 (2d Cir.1979), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Deane v. Thomson McKinnon Securities, Inc., supra.* Compliance with Rule 9(b) insures that the defendant is given adequate information upon which to frame a response.

█ A plaintiff alleging fraud in connection with a securities transaction must

specifically allege the acts or omissions upon which his claim rests. *Ross v. A.H. Robins, supra.* In essence, he must not only identify the particular statements (or omissions), but also specify in what respects each of the statements were false and misleading and the factual basis for believing that the defendant acted fraudulently and is responsible. He must specify: (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) the same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *Todd v. Oppenheimer,* 78 F.R.D. 415, 420–21 (S.D.N.Y. 1978).

▪ Moreover, in order for an action to lie under either section 10(b) or Rule 10b–5, the conduct complained of must occur in connection with the purchase or sale of securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731–32, 95 S.Ct. 1917, 1923–24, 44 L.Ed.2d 539 (1975); *Sacks v. Reynolds Securities, Inc.,* 593 F.2d 1234, 1239 (D.C.Cir.1978). The defendant must have misrepresented or omitted to state material facts. *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 380 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). The plaintiff must also allege that he reasonably relied, to his detriment, upon the misrepresentations or omissions. *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88, 92 (2d Cir.1981). Further, under section 10(b) and Rule 10b–5, scienter is a basic element of a securities fraud claim. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Deane v. Thomson McKinnon Securities, Inc.,* 586 F.Supp. 44, 47 (D.D.C. 1984). And finally, plaintiff must allege that he exercised due diligence in connection with the transactions in question. *Hirsch v. Dupont,* 553 F.2d 750, 763 (2d Cir.1977).

The gravamen of defendant's counterclaim is that in reliance on the representations of Hammerman and Smith Barney that they were experts in the securities investment field, Peacock vested Hammerman and Smith Barney with actual control over a discretionary stock account opened on September 30, 1983; that during the ten month period from September 30, 1983, through July 27, 1984, substantial trading of his account took place. Peacock alleges that during this period his account was turned over more than ten times, and he attaches to his counterclaim a chart which reveals 37 purchases and 35 sales of stock in his account. Peacock further contends that the trading was for the purpose of generating commissions for Hammerman and proceeds for Smith Barney and was in total and complete disregard of the financial and investment needs and objectives of Peacock. Peacock also avers that Hammerman and Smith Barney made false representations to Peacock with respect to the status of his account; that they engaged in unauthorized transactions with respect to his account; and that they failed to provide him with full and adequate records as to his account.

▪ Measured against the above standard, the Court determines that Peacock's fraud claims are deficient. In order to support a fraud-based claim under the federal securities laws, Peacock must identify the particular transactions which form the basis of his claim; he must identify with specificity those trades which he contends were unauthorized. Moreover, he must allege that the conduct complained of occurred in connection with the purchase or sale of securities; that Hammerman and Smith Barney misrepresented or omitted to state material facts; that Peacock reasonably relied, to his detriment, upon the misrepresentations or omissions; that Hammerman and Smith Barney made the misrepresentations or omissions with "scienter," that is, with the intent to deceive, manipulate or to defraud Peacock; and that Peacock exercised due diligence in connection with the transactions in question.

Instead, Peacock has alleged basically that Hammerman and Smith Barney failed to manage his account in a manner satisfactory to Peacock. As alleged, these claims do not rise to the level of stating a claim under the antifraud provisions of the federal securities laws.

■■■ Peacock contends that if the· Court finds that his fraud claims are deficient, that his counterclaim should not be dismissed. Rather, Peacock alleges that if his claims are deficient, he should be given the opportunity to amend his counterclaim under Rule 15(a). Under Rule 15(a), leave to amend shall be freely given when justice so requires. The decision to grant or deny leave to amend, however, is vested in the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Doe v. McMillan*, 566 F.2d 713, 720 (D.C.Cir.1977). In exercising its discretion, the trial court may consider, among other factors, undue delay, dilatory motive on the part of the movant, and undue prejudice to the opposing party by virtue of allowing the amendment. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■■■ Applying the above factors to the instant case, Hammerman's complaint for assault and battery was filed on September 5, 1984. Peacock's answer and counterclaim against Hammerman and Smith Barney were filed on September 28, 1984. The instant motion to dismiss the counterclaim was filed on November 8, 1984. Peacock's opposition to that motion with his request for leave to amend the counterclaim was filed on November 16, 1984. Pretrial in this case is set for May 9, 1985, and jury trial is scheduled to commence on June 3, 1985. The Court determines that there has been no undue delay or dilatory motive on the part of Peacock. Nor would granting him leave to amend the complaint to cure the deficiencies in his fraud claims cause any undue prejudice to Hammerman and Smith Barney. The trial date of June 3, 1985, would not be disturbed by the amendment of the counterclaim. In view of the

general rule of liberality in allowing amendments and because the court determines that there is no strong justification for not permitting the amendment, Peacock will be granted leave to amend his counterclaim in order to cure deficiencies in his fraud-based claims and meet the specificity requirements of Rule 9(b).

■■■ The Court next turns its attention to Peacock's claims under the District of Columbia Code. Counts Three and Seven of the counterclaim allege violations of section 2–2602 of the District of Columbia Code. This statute is the general antifraud provision of the District of Columbia's blue sky law and provides as follows:

It shall be unlawful for any person, in connection with the offer, sale, or purchase of any security, directly, or indirectly:

(1) To employ any device, scheme, or artifice to defraud;

(2) To make any untrue statement of a material fact, or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they are made, not misleading; or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Civil liabilities for violations of the District of Columbia securities code are expressly provided for in section 2–2613 which provides that the District of Columbia's securities laws shall not create any cause of action not specified in sections 2–2613 or 2604(e). Peacock's claims are not encompassed by the two specific sections of District of Columbia law which give rise to private remedies. Therefore, because civil liability under section 2–2602 is specifically precluded by the terms of the statute itself, Peacock's claims under 2–2602 must be dismissed. Therefore, Counts Three and Seven will be dismissed.

Hammerman and Smith Barney next contend that Peacock's common law claims for breach of contract, common law fraud, and

negligence should be severed and referred to arbitration. The Customer's Agreement executed by Peacock when he opened his account at Smith Barney contained an arbitration provision which states in pertinent part:

... any controversy relating to the account of the undersigned, shall be settled by arbitration in accordance with the rules, then in effect, of the Board of Directors of the American Stock Exchange, Inc., the Board of Directors of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc., as the undersigned may elect.

Hammerman and Smith Barney seek enforcement of this provision. Peacock contends that these claims are inextricably intertwined with the claims under the federal securities laws and, therefore, should not be severed and referred to arbitration.

■■■■ Assuming that Peacock amends his counterclaim and that the amendment cures any deficiencies in Peacock's fraud-based claims, the counterclaim, as amended, will contain both common law claims and federal securities law claims. On the face of the complaint, the common law claims are subject to arbitration under the terms of the Customer's Agreement cited above. Federal securities claims, however, are not arbitrable. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). This case thus presents a situation involving claims both arbitrable and nonarbitrable. Generally, when a complaint sets forth a combination of claims, the arbitrable claims should be severed from the nonarbitrable ones and the district court should stay judicial proceedings as to the arbitrable claims, thereby allowing arbitration to proceed. *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (5th Cir.1979). An exception to this rule exists, however, when the arbitrable and nonarbitrable claims are so related that severance is impractical if not impossible. When arbitrable and nonarbitrable claims are inextricably intertwined, the district court should deny arbitration as to the arbitrable claims in order

to protect the jurisdiction of the federal court and avoid any possible preclusive effect. *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1026 (11th Cir.1982).

■■■ Assuming the amended complaint to be filed by Peacock withstands scrutiny for specificity as discussed above, the Court determines that the facts underlying Peacock's common law claims are inextricably intertwined with the facts underlying his federal securities claims. The various causes of action raise common issues with respect to Hammerman's and Smith Barney's propriety of management of Peacock's stock portfolio, the care exercised in managing the account in accordance with Peacock's goals, and the representations made to Peacock with respect to the status of the account. Resolution of these factual issues pervade the various causes of action and will require determinations critical to both the federal claims and the common law claims. Thus, the common law claims cannot be severed for separate resolution.

If, however, Peacock's amended counterclaim fails to cure the deficiencies and must be dismissed for failure to satisfy Rule 9(b) or for any other reason, then the only claims remaining will be the common law claims which appear to be subject to arbitration under the Customer's Agreement. In such event, those remaining common law claims will be referred to arbitration pursuant to the agreement of the parties.

■■■ And finally, Hammerman and Smith Barney contend that Peacock's claim for punitive damages should be denied. The Court first looks to Peacock's claims under the federal securities laws. Section 28(a) of the Securities Exchange Act, 15 U.S.C. § 78bb(a) specifically precludes any recovery of punitive damages:

No person permitted to maintain a suit for damages under the provisions of this chapter shall recover ... a total amount in excess of his actual damages on account of the act complained of.

Because exemplary or punitive damages are not available under the Securities Act

of 1933 or the Securities Exchange Act of 1934, Peacock's claim for punitive damages sought under the federal securities laws must be stricken.

With respect to Peacock's claim for punitive damages on his common law claims, it is axiomatic in the District of Columbia that punitive damages are not favored. *Price v. Griffin*, 359 A.2d 582, 589 (D.C.App.1976). In a situation involving a claim alleging tort, it is clear that punitive damages are awardable only where the defendant's conduct was particularly outrageous, demonstrating reckless disregard for the rights of others, and mere inadvertence or even gross negligence is insufficient. Further, where a claimant seeks punitive damages against a corporation, the claimant must first show that the acts of the agent of the corporation were characterized by willfulness, wantonness, or malice, and then if that test is met, the claimant must also show that the corporation ratified or authorized the acts of the agent. *Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 992 (D.C.App. 1980); *DeFoe v. PEPCO*, 123 A.2d 920 (D.C.Mun.App.1956).

Where the basis of a complaint is a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton, or malicious. The rule in this jurisdiction is that only where the alleged breach of contract merges with, and assumes the character of, a willful tort will punitive damages be available. *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.App.1982), *cert. denied* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982).

Applying the above principles of law to the facts of this case, the Court concludes that Peacock's allegations do not support the recovery of punitive damages on his common law claims. Therefore, his claim for punitive damages must be stricken.

Based upon the foregoing, the Court will enter an order consistent with this Memorandum Opinion dismissing Counts One and Four of the counterclaim because section 17(a) of the Federal Securities Act of 1933 does not imply a private right of action. The Court will also grant Peacock leave to amend his counterclaim to cure any deficiencies on his fraud-based claims in Counts Two, Five, and Six. In addition, Counts Three and Seven will be dismissed because the District of Columbia Code specifically precludes civil liability. And finally, the Court will order that Peacock's claim for punitive damages be dismissed.